**OPERATING ENGINEERS LOCAL UNION NO. 3 OF INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NORTHERN CALIFORNIA CHAPTER, THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., and Central California Chapter, The Associated General Contractors of America, Inc., Respondents.**

**ST. MAURICE, HELMKAMP, AND MUSSER, a California partnership, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 14298, 14406, 14466.

United States Court of Appeals District of Columbia Circuit.

Argued April 8, 1959.

Decided May 8, 1959.

Mr. P. H. McCarthy, Jr., San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Mr. J. Albert Woll, Washington, D. C., was on the brief for petitioner in No. 14298.

Mr. George Bahrs, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Mr. Raymond S. Smethurst, Washington, D. C., was on the brief, for petitioner in No. 14466.

Mr. Arnold Ordman, Attorney, National Labor Relations Board, of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Messrs. Jerome D. Fenton, General Counsel, National Labor Relations Board at the time the brief was filed, Thomas J. McDermott, Associate General Counsel, National Labor Relations Board, Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, Miss Rosanna A. Blake and Mrs. Nancy M. Sherman, Attorneys, National Labor Relations Board, were on the brief, for petitioner in No. 14406 and respondent in Nos. 14298 and 14466.

Mr. Thomas E. Stanton, Jr., San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Mr. Travis Brown, Washington, D. C., was on the brief for respondents in No. 14406.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

These three consolidated cases bring under review a decision and order of the National Labor Relations Board.[1] The relevant events appear in considerable elaboration in the report of the case at 119 N.L.R.B. 1026 (1957).

The Associated General Contractors of America, Inc., referred to as AGC, was the prime contractor on a construction project at Travis Air Force Base in California. The Operating Engineers, Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO, referred to as Local 3, represented the AGC employees under two collective bargaining agreements with AGC, one referred

---

[1]. In No. 14298 petitioner, Local 3, seeks review of a decision and order which found that it and AGC had committed unfair labor practices. The Board seeks enforcement against Local 3. In No. 14406 the Board as petitioner seeks enforcement of that portion of its order directed against AGC. Musser, petitioner in No. 14466, seeks to review and set aside that portion of the order which dismisses allegations in the complaint that Local 3 and AGC committed unfair labor practices other than those found by the Board

to as the 1954 Agreement and the other as the 1955 Agreement.

Case No. 14298 involves the 1954 Agreement, containing the following clause:

> "The terms and conditions of this agreement * * * shall apply equally to any sub-contractor under the control of, or working under contract with [the] employer on any work covered by this agreement, and said sub-contractor with respect to such work shall be considered the same as an individual employer covered hereby."

AGC subcontracted some of the work to St. Maurice, Helmkamp and Musser, a California partnership, referred to as Musser. Musser is a member of the Western Association of Engineers, Architects and Surveyors, called Western Association, which represents its members in labor relations matters. In 1952 the San Francisco Area Group of Professional Employees, referred to as Professional Employees, was certified as the representative of the employees working for members of the Western Association. Musser employed on the Travis project four members of Professional Employees who had a collective bargaining agreement with Musser, via Western Association.

At the instance of Local 3 a work stoppage occurred at the Travis project. The Board found it to be due to the employment by Musser of the four employees who would not come under Local 3's

agreement with AGC. The Board also found that in the effort to bring them within the agreement pressure through the work stoppage was put upon AGC and, through AGC, upon Musser and the four employees. AGC in fact brought about the suspension of the four employees and replaced them with its own, who were covered by its collective bargaining agreement with Local 3. The Board found that in this manner (a) AGC violated sections 8(a) (1) (2) and (3) of the Labor Management Relations Act and that Local 3 violated sections 8 (b) (1) (A) and (2) by causing the removal of Musser's employees and (b) that Local 3 also violated sections 8(b) (1) (A) and (2) by attempting to cause Musser, through the AGC, to violate section 8(a) (3).[2]

In case No. 14466 the 1955 Agreement was in effect. The agreement contained a provision for union security and a subcontractor's clause which reads as follows:

> "The terms and conditions of this Agreement insofar as it affects Employer and the individual employer shall apply equally to any sub-contractor under the control of, or working under contract with such employer on any work covered by this Agreement, and said sub-contractor with respect to such work shall be considered the same as an individual employer covered hereby.
>
> *"That if an individual employer shall sub-contract work as herein*

2. The pertinent provisions of the Act, 61 Stat. 140–41 (1947), 29 U.S.C. § 158 (1952), 29 U.S.C.A. § 158, are:

"Sec. 8(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it * * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * * "

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * *

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

*defined, provision shall be made in such sub-contract for the observance by said sub-contractor of the terms of this Agreement."* [Emphasis supplied.]

Moreover, AGC this time refused to subcontract to Musser, because Musser would not conform with this provision. Musser's reason was, as previously, that it had a collective bargaining agreement with the Professional Employees as the certified representative of its employees, and, therefore, it could not lawfully compel them to join Local 3. In this instance the Board, by a divided vote as in the other case, held that AGC had not violated the Act, reasoning that the preclusion of future work to a prospective subcontractor in the circumstances did not justify the Board in holding that the rights of unidentified employees of such prospective employer were adversely affected.[3]

▮ In case No. 14298 we see no reason to disturb the findings of the Board hinging upon the pressures exerted by the work stoppage, or the Board's judgment that the impact upon the four employees flowed naturally from the stoppage. Moreover, we find no reason to disagree with the legal conclusion of the Board that the specified violations occurred as a result. Accordingly the Board's request for enforcement of that portion of its order running against Local 3 will be granted. Case No. 14406 must necessarily stand or fall along with case No. 14298 because of the interrelationship of the activities carried on between Local 3 and AGC against Musser's employees. It follows from our conclusion to enforce the Board's order against Local 3 in No. 14298 that the

Board's petition for enforcement of that portion of the order directed against AGC, the subject matter of case No. 14406, must also be granted.

AGC contends the Board should have recognized that when Musser's employees came onto the Travis job they came into a collective bargaining unit, by reason of the subcontractor's clause, covered by the 1954 Agreement of Local 3 with AGC, and were subject to its terms. In support of this contention it says that the conditions existing among building and construction contractors in the area, their employees, and the unions, required this in order to promote stability and industrial peace, the fundamental purposes of the Act. It may well be that the industrial and labor conditions in the locality warrant a new approach by the Board in formulating bargaining units in the building and construction industry there, and that the last word has not been said in an evolving situation. But be that as it may we take this case in its present posture. A bargaining unit which would release the Musser employees from the unit fixed for them by the Board had not been established. Local 3's bargaining agreement, moreover, was not with Musser; it was with AGC. When the latter failed to comply[4] it was within the competence of the Board to hold that Local 3, by striking against AGC, brought pressure to bear which carried through as discrimination against Musser's employees due to their membership in another labor organization, and that AGC, by succumbing to Local 3's pressure, discriminated against these same employees when it caused them to be suspended from the Travis project for not belonging to Local 3.

---

3. In both cases the actual terms of the orders of the Board are not challenged.

4. Local 3 complained to AGC that certain sections of the 1954 Agreement relating to wage payments and payments into an employee pension fund were not being observed with respect to Musser's employees on the Travis project. Local 3 sought a "grievance procedure" and when no action was taken it notified AGC

that it was "withdrawing" all employees represented by it on the project. Subsequently Local 3 and AGC established a Board of Adjustment to investigate Local 3's complaints. The Board ruled that AGC had to take the necessary means to insure that work on the project would be in compliance with the 1954 Agreement since it contained a provision that every subcontractor would abide by the terms and conditions of that agreement.

No party to the proceedings contends that the strike was protected by section 13 of the Act, 29 U.S.C.A. § 613, if it amounted to discrimination prohibited by section 8.

It is also contended that no unfair labor practice can be found where the discriminatory action is against employees other than those of the direct employer; specifically, that AGC could not be found to have violated section 8(a) (3) by terminating the employment of Musser's employees, nor could Local 3 have been found to have violated section 8(b) (2) by causing that action, since there was no direct employer-employee relationship between AGC and Musser's employees. This position had the support of two members of the Board, relying upon previous Board decisions, The Great Atlantic and Pacific Tea Co., 116 N.L.R.B. 943 (1956); United Association of Journeymen of the Plumbing and Pipefitting Industry, 116 N.L.R.B. 119 (1956), and language in N.L.R.B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. The provisions of the Act here involved, see footnote 2, supra, do not read as this contention would construe them, in contrast with language in other provisions.[5] The terms used in the applicable provision bear an interpretation which reaches discrimination as to employees of another employer. We must guard against giving this broad language a scope which includes employees whose relationship to the controversy is so attenuated as to cause their inclusion to defeat a sound administration of the Act; yet the closeness of Musser to the dispute leads us to defer to the Board's interpretation which brings its four employees within the questioned protection. This is an area of interpretation into which we should follow the Board. N.L.R.B. v. Hearst Publications, Inc., 322 U.S. 111,

128–129, 64 S.Ct. 851, 88 L.Ed. 1170; N.L.R.B. v. Gluek Brewing Co., 8 Cir., 1944, 144 F.2d 847, 855.

■ This brings us to case No. 14466, where the 1955 Agreement governed the relations between AGC and Local 3. In compliance with the subcontractor clause, AGC, in contrast with its previous conduct, declined this time to subcontract to Musser except in accordance with the agreement with Local 3. The Board, again dividing, held that the actions of AGC and Local 3, in executing, maintaining, and implementing the 1955 Agreement, did not add up to violations by AGC of sections 8(a) (1), (2) and (3) or by Local 3 of sections 8(b) (1) (A) and (2). This is heavily attacked as inconsistent with the ruling under the 1954 Agreement; but there are factual differences, and we are constrained to support the decision of the Board that these permit a different legal conclusion. Here AGC abided by its agreement with Local 3. While the result might well have been that employees of Musser were denied employment on AGC projects due to their affiliation with a union other than Local 3, this did not come about as a result of strike action by Local 3, as found in the other case, or by pressure exerted through AGC, as also there found, but by a decision on the part of AGC itself to comply with its agreement with Local 3. Though, as the Board suggests in this court, there was discrimination by one employer, AGC, against another, Musser, the Act stands aside in respect of such action, forbidding discrimination only against employees.

We would not be well advised to substitute a judgment different from that of the Board. It could lawfully conclude, as it did, that the relationships between AGC and prospective employees of a prospective subcontractor were so at-

---

5. Section 8(a) (5) states that the employer will commit an unfair labor practice if he refuses to bargain collectively with respresentatives of *his* employees, and section 8(b) (4) (B) prohibits a labor organization from striking to force or require any other employer to recognize the labor organization "as the representative of *his* employees. * * *" (Emphasis supplied.) See, also, Austin Company, 101 N.L.R.B. 1257 (1952).

tenuated that the refusal of AGC to award a subcontract to Musser, and the existence, maintenance and implementation of AGC's agreement with Local 3, did not constitute discrimination by either AGC or Local 3 against employees.

The order of the Board will be enforced.